UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

KEITH HARRIS, et ux.,                                                    PLAINTIFFS

v.                                     CIVIL ACTION NO. _____

3M COMPANY., et al.                                                      DEFENDANTS

## NOTICE OF REMOVAL

Defendant 3M Company hereby gives notice of removal of the civil action *Keith Harris, et ux. v. 3M Company, et al.* from the Martin Circuit Court (Action No. 22-CI-00165) (State Court Action) to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville. Pursuant to 28 U.S.C. § 1446(d), no further proceedings shall be had in state court unless and until the case is remanded.

## BACKGROUND

### I.    Harris sues two diverse manufacturers and two non-diverse distributors.

On November 16, 2022, Plaintiffs Keith and Whitney Harris filed the State Court Action.[1] Keith Harris is a former coal miner who brings personal injury claims.[2] Whitney Harris, his wife, presents a claim for loss of consortium.[3] Plaintiffs brought claims against four Defendants.

Two Defendants, 3M and Moldex-Metric, Inc., manufacture respirators (federally certified safety products). Harris allegedly used the 3M 8210 N95 respirator and the

---

[1]    The entire state court record is attached as **Exhibit 1** to this Notice. For ease of reference, the Complaint is also attached as **Exhibit 2** to this Notice.

[2]    **Ex. 2**, Compl. ¶¶ 17-34, 41-52, 60-67.

[3]    **Ex. 2**, Compl. ¶¶ 68-74. Unless otherwise noted, all subsequent references to "Harris" are to Keith Harris.

Moldex 2200 N95 respirator while working around coal mine dust.[4] Neither 3M nor

Moldex is a citizen of Kentucky.[5] Plaintiffs have dismissed their claims against Moldex.[6]

Two Defendants, Kentucky Mine Supply Company (KMS) and Mine Service

Company, Inc. (MSC) (collectively, Local Stores), are Kentucky corporations that sell a

variety of products used in mining.[7] Plaintiffs allege that "[d]uring [Harris']

employment, the above stated respirators were supplied, distributed, and/or sold to

Plaintiff's employers by" the Local Stores.[8] Plaintiffs claim the Local Stores were

negligent and have no immunity under Kentucky's "Middleman" Statute (KRS

411.340).[9] Plaintiffs allege the Local Stores knew or reasonably should have known of

defects in the 3M 8210 N95 and Moldex 2200 N95 respirators, and that they sold the

respirators Harris used to his employers.[10]

3M also obtained leave to file a third-party complaint against Harris' employers

so fault could be apportioned to them.[11] Five Third-Party Defendants were dismissed

pursuant to agreed orders.[12] Two Third-Party Defendants (Superior Coal Services, LLC

and Crimson Oak Resources, LLC) were served but never answered. It is unclear from

---

[4]  **Ex. 2**, Compl. ¶ 19.

[5]  *See infra* nn.28-30.

[6]  *See* **Ex. 1**, State Court Record at Agreed Order of Dismissal (entered Aug. 5, 2024).

[7]  *See infra* n.33.

[8]  **Ex. 2**, Compl. ¶ 13.

[9]  **Ex. 2**, Compl. ¶¶ 35-40, 53-59.

[10]  **Ex. 2**, Compl. ¶¶ 35-40, 53-59.

[11]  **Ex. 1**, State Court Record at Order Granting 3M Company's Motion to File Third-Party Complaint (entered Aug. 16, 2024).

[12]  **Ex. 1**, State Court Record at Agreed Orders of Dismissal (entered Sept. 11, 2024; Sept. 17, 2024; Oct. 3, 2024 (two orders entered this day); and Jan. 23, 2025).

the State Court Record whether the warning order attorney served the final Third-Party Defendant (Southeastern Land, LLC).

## II.  Harris cannot identify where his employers purchased respirators.

Harris says he wore respirators while working for the following mine employers: Excel Mining, LLC; Rockspring Development, Inc.; Superior Coal Services, LLC; Hampden Coal LLC (a/k/a Blackhawk Mining LLC); Southeastern Land LLC; Mingo Logan Coal Company (a/k/a Arch Coal, Inc.) (a/k/a Mountain Laurel); and Aracoma Coal Company, Inc.[13] Of these, only his work for Excel Mining, LLC, was in Kentucky; the other mines were in West Virginia.[14] He also worked at a mine in Alabama, but he admits he did not wear a respirator there.[15]

Harris maintains that with one exception (Southeastern Land), his employers provided the respirators he used.[16] While working at Southeastern Land, Harris says he

---

[13]  **Ex. 3**, 4/25/24 Keith Harris Dep. (Harris Dep.), 82:13-84:21 (Excel Mining, LLC/Quality Enterprises, Inc.), 117:12-119:13 (Rockspring Development, Inc.), 163:14-165:6 (Superior Coal Services, LLC), 165:8-15, 167:2-8 (Hampden Coal LLC a/k/a Blackhawk Mining LLC), 168:11-22 (Southeastern Land, LLC); 168:23-169:6 (Mingo Logan Coal Company a/k/a Arch Coal, Inc. a/k/a Mountain Laurel), 169:16-170:4 (Aracoma Coal Company, Inc.), 170:6-170:24 (Crimson Oak Grove Resources, LLC). Harris also worked a few days for Greenbrier Minerals, but he admits not using a respirator there. *Id.* 272:21-277:5.

[14]  **Ex. 4**, Plaintiff's Answers and Objections to 3M Company's First Set of Interrogatories at No. 2.

[15]  **Ex. 3**, Harris Dep. 170:6-24, 272:7-10.

[16]  *Id.* 297:23-298:7.

used respirators he bought from Lowe's.[17] Harris did not sue Lowe's, which for diversity purposes is a citizen of North Carolina.[18]

Harris does not know the name of the company from which any of his employers allegedly purchased respirators.[19] He also cannot identify the persons who allegedly ordered the respirators.[20] The parties deposed four of Harris' co-workers. Like Harris, none could identify the company from which the employers allegedly purchased respirators.[21]

Despite not knowing which company had sold the respirators he allegedly used to his employers, Harris served no requests for production, interrogatories, or requests for admission to find out, or otherwise build his case against the Local Stores. He did not depose their corporate representatives or employees. The scores of lay witnesses he designated for trial included none from the Local Stores.[22] And his more than a dozen retained experts did not disclose opinions against them.[23]

---

[17] *Id.* 298:5-7.

[18] *See* **Ex. 5**, Fed. R. Civ. P. 7.1(a) Combined Disclosure Statement of Lowe's Home Centers, LLC, filed on May 5, 2025 in *Smithson v. Lowe's Home Centers, LLC*, No. 3:25-cv-00256-DH (W.D. Ky.).

[19] **Ex. 3**, Harris Dep., 297:19-22.

[20] *Id.* 298:8-11.

[21] **Ex. 6**, Excerpts from 10/17/24 Benjamin Blevins Dep., 60:23-61:8; **Ex. 7**, Excerpts from 10/17/24 Donald Moore Dep., 68:14-23; **Ex. 8**, Excerpts from 10/17/24 Justin Porter Dep., 49:21-50:8; **Ex. 9**, Excerpts from 10/17/24 Jimmy Waller Dep., 48:18-49:4. Only Waller could name a mine employee who allegedly bought respirators ("Pete. I can't remember his last name.").

[22] *See* **Ex. 1**, State Court Record at Plaintiffs' Designation of Lay Witnesses (filed July 15, 2024).

[23] *See* **Ex. 1**, State Court Record at Plaintiffs' Designation of Expert Witnesses (filed Aug. 28, 2024).

### III.    The Local Stores never sold respirators to Harris' employers.

On May 23, 2025, each Local Store admitted that it never distributed, supplied, or sold any Respiratory Protection Devices (including respirators) to Harris' employers.[24] These admissions disprove Harris' unsubstantiated allegation that the Local Stores sold his employers the respirators he used.

Fact discovery in the State Court Action closed May 23, 2025. Trial is set for September 22.

### JURISDICTION

Removal to this Court is proper under 28 U.S.C. § 1441(a). The State Court Action satisfies diversity jurisdiction under 28 U.S.C. § 1332(a). The parties properly joined and served—Plaintiffs and 3M—are completely diverse, and the matter in controversy exceeds the sum of $75,000. The citizenship of the Local Stores is disregarded because they are fraudulently joined to defeat federal jurisdiction. The citizenship of the remaining Third-Party Defendants is immaterial because the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over 3M's claims against them.

### I.    The parties properly joined and served are completely diverse.

#### A.    Plaintiffs, 3M, and Moldex are completely diverse.

A natural person is, for diversity purposes, a citizen of the state of domicile.[25] Domicile means physical presence with an intent to remain indefinitely.[26] Plaintiffs

---

[24]    **Ex. 10**, KMS' Responses to 3M's First Set of Requests for Admission; **Ex. 11**, MSC's Responses to 3M's First Set of Requests for Admission.

[25]    *Kendall v. DeLong*, No. 20-5573, 2020 WL 9813548, at *2 (6th Cir. Dec. 1, 2020).

[26]    *Id.*

reside in Ulysses, Kentucky, where they have lived for at least 18 years.[27] Plaintiffs are citizens of Kentucky for diversity purposes.

A corporation is, for diversity purposes, a citizen of both its state of incorporation and the state in which its principal place of business is located.[28] 3M is a Delaware corporation having its principal place of business in Minnesota,[29] making 3M a citizen of both states. Moldex, though no longer a party, is a California corporation with its principal place of business there, as well,[30] making Moldex a California citizen for diversity purposes.

The properly joined and served parties were completely diverse when the case was filed and remain completely diverse as of removal.[31]

### B.    The Local Stores are fraudulently joined.

The doctrine of fraudulent joinder has deep roots in federal law. The Supreme Court has long held that the statutory "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the

---

[27]    *See* **Ex. 12**, Excerpts from 3/26/25 Whitney Harris Dep., 8:8-10:6; **Ex. 3**, Harris Dep., 33:18-36:13. Plaintiffs briefly lived in Alabama in 2021, but during that time they kept their home in Ulysses and returned to it after moving home from Alabama. *See* **Ex. 12**, Whitney Harris Dep., 8:8-10:6.

[28]    28 U.S.C. § 1332(c)(1).

[29]    **Ex. 1**, State Court Record at Defendant 3M Company's Answer, ¶ 2 ("3M admits that it is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business in the state of Minnesota").

[30]    **Ex. 13**, Compl. of Moldex-Metric, Inc. [1] ¶ 1, filed on Dec. 26, 2024 in *Moldex-Metric, Inc. v. Ansari Traders, LLC*, No. 2:24-cv-11143 (C.D. Cal.) (alleging that Moldex "is a California corporation having principal place of business at 10111 West Jefferson Boulevard, Culver City, California 90232").

[31]    *See Jerome-Duncan, Inc. v. Auto-By-Tel., L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

controversy."[32] The Court is presented with that situation. The Local Stores are Kentucky corporations with Kentucky principal places of business, making them Kentucky citizens and facially defeating diversity jurisdiction.[33] But the joinder is fraudulent, and their citizenship should be disregarded, because the record evidence establishes that Plaintiffs have no colorable claims against them.[34]

The Court described the requirements for fraudulent joinder when it found the same two Local Stores were not fraudulently joined in another respirator case. In that case (*Castle*), the Court explained that "[j]oinder of a non-diverse defendant is fraudulent only if it is 'clear that there can be no recovery [against that defendant] under the law of the state on the cause alleged or on the facts in view of the law.'"[35] "In other words, the removing party must show that there is no 'colorable basis for predicting that a plaintiff may recover against [that defendant].'"[36] "If the plaintiff has even a 'glimmer of hope,' then any charge of fraudulent joinder fails, and the Court must remand the case to state court for want of subject matter jurisdiction.'"[37]

In that order, the Court determined that "[i]n assessing whether joinder was fraudulent, the Court employs 'a test similar to, but more lenient than, the analysis

---

[32]  *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914).

[33]  **Ex. 14**, 2024 Annual Report of Kentucky Mine Supply Company (showing formation in Kentucky and "[p]rincipal [o]ffice" in Harlan, KY); **Ex. 15**, 2025 Annual Report of Mine Service Company, Inc. (showing formation in Kentucky and "[p]rincipal [o]ffice" in Hazard, KY).

[34]  *See Jerome-Duncan*, 176 F.3d at 907.

[35]  *Castle v. 3M Co.*, 664 F. Supp. 3d 770, 773-74 (E.D. Ky. 2023) (alteration in original) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

[36]  *Id.* at 774 (alteration in original) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999)).

[37]  *Id.* (quoting *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014)).

applicable to a Rule 12(b)(6) motion to dismiss.'"[38] "As with a 12(b)(6) motion, the Court 'must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non[-]removing party.'"[39] "In evaluating fraudulent joinder, the Court can pierce the pleadings and consider the sort of evidence it would at summary judgment but solely 'for the limited purpose of determining whether there are undisputed facts that negate the [plaintiffs'] claims.'"[40]

In "determining whether a defendant has been fraudulently joined," the Court found that its "task is limited to determining 'whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.'"[41] "[P]iercing is for the limited purpose of considering 'undisputed facts that negate the claim' and 'is not intended to provide an opportunity to test the sufficiency of the factual support for a plaintiff's claim, as is done in a Rule 56 motion."[42]

For example, as the Court acknowledged, fraudulent joinder existed when the non-diverse defendants submitted affidavits that "completely negate[d]" the plaintiffs' claims against the non-diverse defendants.[43] Considering the "affidavits in light of the plaintiffs' lack of evidence" left "no reasonable basis for predicting that plaintiffs might

---

[38]    *Id.* (quoting *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012)).

[39]    *Id.* (alterations in original) (quoting *Coyne*, 183 F.3d at 493).

[40]    *Id.* (alterations in original) (quoting *Casias*, 695 F.3d at 433).

[41]    *Id.* at 775 (quoting *Adams v. Minn. Mining & Mfg. Co.*, No. 4:03-cv-182, 2004 WL 718917, at *3 (W.D. Ky. Mar. 30, 2004)).

[42]    *Id.* (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011)).

[43]    *Id.* (alteration in original) (quoting *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000)).

establish liability" against the non-diverse defendants.[44] As referenced, the Court has held the Local Stores were not fraudulently joined in a respirator case where 3M did "not cite any undisputed facts negating Plaintiffs' claims that the Supplier Defendants [i.e., the Local Stores] were involved in distribution of the targeted masks and knew or should have known about the Respirators' alleged defects."[45] The Court held the plaintiffs' failure to engage in discovery concerning the Local Stores, leaving the plaintiffs with no evidence against the Local Stores, was "not equivalent to evidence or facts negating the colorable basis for liability against" the Local Stores.[46] The plaintiffs' complaint had "specific allegations linking the masks at issue to the mask makers and mask distributors," and the record 3M provided did "not dispel the contentions."[47]

The record here supplies the evidence the Court found lacking in *Castle,* evidence negating the basis on which Plaintiffs claim the Local Stores are liable, i.e., they "distributed, supplied and/or sold" respirators "to Plaintiff's employers."[48] Unlike in *Castle*, the Local Stores admit that they *never* distributed, supplied, or sold respirators to Harris' employers.[49] Those admissions make this case like *Badon*—the case that found "fraudulent joinder where non-diverse defendants produced affidavits that

---

[44]     *Badon*, 224 F.3d at 393 (internal quotation marks and citation omitted).

[45]     *Id.*

[46]     *Id.*

[47]     *Id.* at 775-76.

[48]     **Ex. 2**, Compl. ¶ 13.

[49]     **Ex. 10**, KMS' Responses to Requests for Admission; **Ex. 11**, MSC's Responses to Requests for Admission.

'completely negate[d]' the plaintiffs' claims"—because the Local Stores' admissions disprove Plaintiffs' allegation against them.[50]

Applying the law to the factual record,[51] these admissions leave Plaintiffs devoid of even a "glimmer of hope" of proving their claims against the Local Stores. Negligence claims require the plaintiff to prove the defendant factually and legally caused the plaintiff's injury.[52] Because the Local Stores did not distribute, supply, or sell respirators to Harris' employers, the Local Stores cannot have caused an injury to Harris. Nor can Harris legitimately assert otherwise, having admitted he does not know where his employers purchased respirators.[53]

3M has demonstrated "there is no 'colorable basis for predicting that a plaintiff may recover against [the Local Stores].'"[54] This makes it "'clear that there can be no recovery [against the Local Stores] under the law of the state on the cause alleged or on the facts in view of the law.'"[55] The claims against the Local Stores are fraudulently joined.

## II.    The remaining Third-Party Defendants' citizenships are immaterial; the Court has supplemental jurisdiction over those claims.

As discussed, 3M impleaded Harris' former employers as Third-Party Defendants. Most were dismissed, but some remain as parties. They do not defeat

---

[50]    *Castle*, 664 F. Supp. 3d at 775 (citing *Badon*, 224 F.3d at 393).

[51]    *See id.*

[52]    *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016); *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970).

[53]    **Ex. 3**, Harris Dep. 297:19-22.

[54]    *Castle*, 664 F. Supp. 3d at 774 (quoting *Coyne*, 183 F.3d at 393).

[55]    *Id.* at 773-74 (alteration in original) (quoting *Alexander*, 13 F.3d at 949).

diversity jurisdiction or removal. The Court has supplemental jurisdiction over 3M's claims against them.

A non-diverse third-party defendant's presence does not defeat complete diversity that otherwise exists between the plaintiffs and the defendants.[56] That is because Rule 14 claims against third parties, such as 3M's claims against the remaining Third-Party Defendants, "generally do not require an independent jurisdictional basis. Instead, such claims fall within the court's supplemental jurisdiction if the impleaded [third-party] defendant's actions share a 'common nucleus of operative fact' with the case already before the court."[57]

Similarly, the Supreme Court has also reinforced that "defendant" as used in 28 U.S.C. § 1441(a) does not include third-party defendants.[58] The "'civil action . . . of which the district cour[t]' must have jurisdiction is the action as defined by the plaintiff's complaint,' and the "'defendant' to that action is the defendant to that complaint."[59] So, the Sixth Circuit concluded that a third-party complaint brought "solely to allow [the defendants] to seek an instruction apportioning fault to the [third-party defendant] if the evidence warranted," did not thwart diversity jurisdiction, even though the third-party defendant was not diverse from the plaintiff.[60] District courts routinely apply this rule.[61]

---

[56]   *Grimes v. Mazda N. Am Ops.*, 355 F.3d 566, 572 (6th Cir. 2004).

[57]   *Id.*

[58]   *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748-49 (2019).

[59]   *Id.* at 1748 (all alterations in original; quoting 28 U.S.C. § 1441(a)).

[60]   *Grimes*, 355 F.3d at 573.

[61]   *See, e.g.*, *Affordable Constr. Servs., Inc. v. Auto-Owners Ins. Co.*, No. 1:20-cv-01016-STA-jay, 2020 WL 1955267, at *2-3 (W.D. Tenn. Apr. 23, 2020) (relying on *Grimes* to deny motion to remand).

3M sought leave to file a Third-Party Complaint against Harris' employers so they could be apportioned fault. Claims against the remaining employers plainly share a common nucleus of operative fact with Harris' claims, because the employers controlled the mine conditions in which Harris worked. Common questions include whether the employers complied with their federal obligation to limit coal mine dust, and what respirator training they provided to Harris. This standard Kentucky practice, allowing for a potential apportionment instruction, does not affect diversity jurisdiction.[62]

## III.    More than $75,000 is plausibly at issue.

"[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."[63]

In examining the amount in controversy, the Court should consider the number, nature, and seriousness of the damages categories asserted in the Complaint.[64] The Court should also consider whether punitive damages are pleaded: as Kentucky permits punitive damages, the Court should include at least a single-digit multiplier in the jurisdictional math.[65]

The amount-in-controversy requirement is plausibly satisfied. Per Kentucky court rule, the Complaint does not state the amount of damages sought. But Plaintiffs claim compensatory damages for medical expenses and pain and suffering; they also

---

[62]    *See Grimes*, 355 F.3d at 571-73.

[63]    *Dart Cherokee Basin Oper. Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

[64]    *E.g.*, *Hayes v. Equity Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[65]    *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005); KRS 411.184.

seek punitive damages.[66] Assuming even a 2:1 punitive damages ratio, compensatory damages would need to exceed only $25,000 to reach the overall threshold. Just one of the compensatory categories listed above can easily reach that threshold in a personal-injury case.

The few plaintiff verdicts in respirator lawsuits have all exceeded $75,000. In *Couch v. MSA*, a Knott County jury awarded a single plaintiff $8 million total (including $4 million in compensatory damages).[67] In *Cox v. 3M*, a Knox County jury awarded $67.5 million ($62.5 in punitive damages) to two respirator plaintiffs.[68] In another single-plaintiff respirator case tried to a defense verdict last year, Plaintiffs' counsel demanded more than $100 million in liquidated damages.[69] These examples further confirm that the amount in controversy plausibly exceeds $75,000. Should Plaintiffs contest that allegation, 3M will submit additional evidence.[70]

---

[66]  **Ex. 2**, Compl. at *ad damnum* (p. 19).

[67]  No. 10-CI-155 (Knott Cir. Ct.). **Ex. 16**, WYMT, Knott County man awarded 8 million dollar judgment in dust mask lawsuit, https://www.wymt.com/content/news/Knott-County-man-awarded-8-million-dollar-judgment-in-dust-mask-lawsuit--370562261.html.

[68]  **Ex. 17**, Judgment in *Cox v. 3M Co.*, No. 16-CI-0100 (Knott Cir. Ct.).

[69]  **Ex. 18**, Plaintiff's Final CR 8.01 Disclosures, made Jan. 4, 2024 in *Estate of Clayton Looney v. 3M Co.*, No. 20-CI-001457 (Pike Cir. Ct.).

[70]  *See Dart Cherokee*, 574 U.S. at 89.

## PROCEDURAL REQUIREMENTS

### I.    Removal is timely.

3M timely removed within 30 days after the Local Stores served an other paper with "solid and unambiguous information" establishing fraudulent joinder.[71] The one-year limit either does not apply or, alternatively, its bad-faith exception is satisfied.

### A.    Removal is timely under 28 U.S.C. § 1446(b)(3).

"The 30-day period [for removal] in § 1446(b)(1) starts to run only if the initial pleading contains solid and unambiguous information that the case is removable."[72] Otherwise, the defendant must file the notice of removal 'within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper' that contains solid and unambiguous information that the case is removable."[73] The term "other paper" is "'expansive' and includes 'a wide array of documents within its scope.'"[74] "[V]arious discovery documents," including responses to requests for admissions, "may constitute 'other papers.'"[75] This broad definition furthers the "intent of § 1446(b)" to "make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists."[76]

3M received an "other paper" that "contain[ed] solid and unambiguous information" establishing fraudulent joinder when the Local Stores served their

---

[71]    *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015).

[72]    *Id.* (internal quotation marks and citation omitted).

[73]    *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

[74]    *Berera*, 779 F.3d at 365 (quoting 14C Wright & Miller § 3731 (4th ed. 2009)).

[75]    *Id.* (quoting Wright & Miller § 3731 (4th ed. 2009)).

[76]    *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 466 (6th Cir. 2002); *see also Berera*, 779 F.3d at 365.

responses to the requests for admissions on May 23, 2025.[77] 3M timely removed within 30 days after.

> **B.      The one-year limit does not apply.**

Removals based on diversity jurisdiction ordinarily are subject to a one-year limit.[78] But that limit is inapplicable because the Local Stores are fraudulently joined.

Some background is helpful. Congress added 28 U.S.C. § 1446(c)(1)'s one-year limitation in 1988.[79] Plaintiff lawyers responded by using various questionable mechanisms to defeat removal. Courts, including this one, did not condone these shenanigans. They recognized exceptions to the one-year limit when plaintiffs had, for example, fraudulently joined a non-diverse defendant.[80] Congress also reacted. It found that the 1988 amendment had "led some plaintiffs to adopt removal-defeating strategies designed to keep the case in state court until after the 1-year deadline."[81] Responding to those practices in 2011, it amended section 1446(c), adding a bad-faith exception.[82]

When fraudulent joinder is shown, the one-year limitation does not apply. Even before Congress added the bad-faith exception, which was plainly intended to thwart

---

[77]     *See Berera*, 779 F.3d at 365 (citation omitted).

[78]     28 U.S.C. § 1446(c)(1).

[79]     Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, 102 Stat. 4642, sec. 1016.

[80]     *See, e.g.*, *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427 (5th Cir. 2003) ("Strict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction."); *Estate of Morgan v. Cabela's, Inc.*, No. 09-91-GFVT, 2010 WL 11646777, at *4 (E.D. Ky. 2010) (concluding one-year limit inapplicable when plaintiff fraudulently joined non-diverse defendant).

[81]     H.R. Rep. No. 112-10, at 15 (2011), *available at* https://www.govinfo.gov/content/pkg/CRPT-112hrpt10/pdf/CRPT-112hrpt10.pdf.

[82]     Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, 125 Stat. 758, 760, sec. 103.

removal-defeating strategies, courts (including this one) regularly concluded that "the one-year time limit on removing an action from state court does not apply when a plaintiff has fraudulently joined a non-diverse defendant."[83]

The 2011 amendment solidifies this conclusion, allowing removal "on fraudulent joinder grounds even after [the action] has been pending in state court for more than one year."[84] As the Western District of Kentucky has noted, courts have "evaluated claims of bad faith under the [current] version of 28 U.S.C. § 1446(c) *by analyzing whether the non-diverse party was fraudulently joined or* was not dismissed to preclude timely removal."[85] Other district courts have reached similar conclusions.[86]

---

[83] *Estate of Morgan v. Cabela's, Inc.*, No. 09-91-GFVT, 2010 WL 11646777, at *4 (E.D. Ky. 2010); *Hardy v. Ajax Magnathermic Corp.*, 122 F. Supp. 2d 757, 759 (E.D. Ky. 2000) (concluding one-year limitation "does not bar removal . . . *if* Plaintiffs fraudulently joined the nondiverse defendant"); *Bennett v. Ford Motor Co.*, No. 5:07CV-115-R, 2007 WL 4561281, at *2-3 ("[T]he one-year limitation of 28 U.S.C. § 1446(b) d[oes] not bar removal if the plaintiffs fraudulently joined the nondiverse defendant." (citing *Hardy*, 122 F. Supp. at 759)).

[84] *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1256 (D.N.M. 2014).

[85] *Larue v. Volkswagen Grp. of Am., Inc.*, No. 1:17-cv-000001-GNS, 2017 WL 2312480, at *6 (W.D. Ky. May 26, 2017) (emphasis added).

[86] *See, e.g.*, *McVey v. Anaplan, Inc.*, No. 19-cv-07770, 2020 WL 5253853, at *3 (N.D. Ill. Sept. 3, 2020) ("[T]here could certainly be scenarios where bad faith and fraudulent joinder are congruent, and proof of fraudulent joinder simultaneously satisfies the requirements for bad faith."); *Nele v. TJX Cos., Inc.*, No. 11-07643, 2013 WL 3305269, at *3 (E.D. Pa. July 1, 2013) ("'bad faith' can take the form of fraudulent joinder of a defendant to defeat diversity"); *see also Chesapeake & Ohio R.R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) (fraudulent joinder shown where "joinder is without right and made in bad faith"). This is not to say that bad faith and fraudulent joinder are interchangeable, or that bad faith requires fraudulent joinder. "In theory, there are ways to establish bad faith without resorting to the fraudulent joinder doctrine." *McVey*, 2020 WL 5253853, at *3. As this Court has noted, "all district courts which have considered the issue appear to agree that the bad faith analysis is necessarily broader than the narrow colorable claim analysis applied by this Court in fraudulent joinder cases." *Williams v. 3M Co.*, No. 7:18-cv-63-KKC, 2018 WL 3084710, at *3 (E.D. Ky. June 22, 2018) (citations omitted).

Those decisions have clear application here. The Local Stores were fraudulently joined, so the one-year limit does not apply.[87]

### C.    The evidence establishes bad faith.

Congress added the bad-faith exception to section 1446 after recognizing that plaintiffs often deployed "removal-defeating strategies" to avoid federal court.[88] Plaintiffs are engaged in one of those strategies. Plaintiffs joined, failed to pursue, and maintain these claims in bad faith, to prevent removal. If the one-year limit applies despite the proof of fraudulent joinder, the bad-faith exception is satisfied.

The Sixth Circuit does not appear to have considered bad faith under section 1446(c)(1).[89] District courts have considered a variety of tests for bad faith, with some seeking intentional misconduct or strategic gamesmanship and others focusing on whether the plaintiff actively litigated against the non-diverse defendant.[90] A rare appellate decision on bad faith (*Hoyt v. Lane Construction Company*), in which the Fifth Circuit affirmed a finding of bad faith, suggests that a totality-of-the-circumstances approach is proper, under which the plaintiff's failure to develop the claims against the non-diverse defendant shows bad faith.[91] This is consistent with the "active litigation" rule that the plaintiff's failure to actively litigate against the non-diverse defendant establishes bad faith.[92]

---

[87]    *Estate of Morgan*, 2010 WL 11646777, at *4.

[88]    H.R. Rep. 112-10, § 103, at 15 (2011).

[89]    *See McNeal v. Foundation Radiology Grp., P.C.*, No. 1:22-cv-10645, 2022 WL 3010694, at *3 (E.D. Mich. July 29, 2022); *Williams*, 2018 WL 3084710, at *3.

[90]    *See Williams*, 2018 WL 3084710, at *3-4; *Aguayo*, 59 F. Supp. 3d at 1273.

[91]    *See Hoyt v. Lane Constr. Co.*, 927 F.3d 287, 292 (5th Cir. 2019).

[92]    *See Williams*, 2018 WL 308471, at *3 (citing *Aguayo*, 59 F. Supp. 3d at 1228-29).

In *Hoyt*, plaintiffs' trial witness list omitted fact witnesses from the non-diverse defendant, designated no witnesses who criticized the non-diverse defendant, and offered expert reports that referenced the non-diverse defendant just once.[93] After the plaintiffs voluntarily dismissed the non-diverse defendant just after the one-year limit, the remaining defendant removed.[94] Denying remand, the district court found plaintiffs had acted in bad faith.[95]

Affirming, the Fifth Circuit noted that the plaintiffs' "witness list for trial did not include any fact witnesses from [the non-diverse defendant]. And [their] expert witnesses made no serious efforts to establish [the non-diverse defendant's] liability."[96] This "suggest[ed]" the plaintiffs had kept the non-diverse defendant in the case for "one purpose and one purpose only—to prevent removal during § 1446(c)'s one-year removal period."[97] A key factor in finding bad faith was that the plaintiffs had made only "half-hearted[ ]" efforts to pursue a claim against the non-diverse defendant.[98]

The outcome of *Hoyt* is consistent with what has been recognized as the "leading case on the bad-faith exception from this circuit," a Northern District of Ohio case (*Keller*) that applies an intentional conduct standard.[99] *Keller* found that a plaintiff

---

93  *Id.*; **Ex. 19**, Aug. 3, 2018 Br. of Appellee, at 4-5, *Hoyt v. Lane Constr. Co.*

94  *Hoyt*, 927 F.3d at 291-92.

95  *Id.*

96  *Id.*

97  *Id.* at 292-93.

98  *Id.* at 292. Other factors also influenced the court's reasoning, including that the dismissal occurred soon after the one-year limit and that the plaintiffs received nothing in exchange. *Id.*

99  *McNeal v. Foundation Radiology Grp., P.C.*, No. 1:22-cv-10645, 2022 WL 3010694, at *3 (E.D. Mich. July 29, 2022) (citing *Keller Logis. Grp. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 778 (N.D. Ohio 2019)).

maintained claims against a non-diverse truck dealer in bad faith, emphasizing "(1) the lack of discovery from the dealer, including the lack of depositions of the dealer's employees; (2) the lack of explanation for the dealer's [eventual] dismissal; and (3) a prelitigation statement from one of the plaintiffs" admitting his "lawyer told him to name the Dealer as a defendant" to keep the case in state court.[100] The Eastern District of Michigan likewise found bad faith where the plaintiff "took little discovery" from the non-diverse defendant and eventually dismissed it "with no compensation and no explanation of what, if anything, had changed since the start of discovery."[101] The court recognized that the admission present in *Keller*, though "particularly damaging," was not necessary to find bad faith.[102] The court also noted that bad faith does not require "malicious or unsavory conduct" and "may apply even if the plaintiff initially states a valid claim against the nondiverse defendant."[103]

The Court raised similar concerns about half-hearted litigation against non-diverse defendants in *Williams*, finding the respirator plaintiff there "ha[d] done only the bare minimum to actively litigate th[e] case" against the same Local Stores joined in many respirator cases, and that this was just barely "enough to avoid removal."[104] The Court noted its "concerns" that the plaintiff had acted in bad faith.[105] The order described as "suspect" the plaintiff's "decision not to depose employees" of the Local

---

[100]    *McNeal*, 2022 WL 3010694, at *3 (summarizing *Keller*, 391 F. Supp. 3d at 776-80).

[101]    *Id.*

[102]    *Id.*

[103]    *Id.* (quoting *Keller*, 391 F. Supp. 3d at 778-79).

[104]    *Williams*, 2018 WL 3084710, at *5.

[105]    *Id.*

Stores.[106] At argument on the motion to remand, the Court expressed further "concern" that the main evidence against the Local Stores had been developed in a deposition of another of the plaintiff's lawyer's clients. The Court was generally "concern[ed]" with "what's happening with the suppliers" "as these cases develop."[107] What particularly persuaded the Court not to find bad faith in *Williams*, however, was that the plaintiff had at least "deposed" a witness "within the discovery deadline" whose testimony "developed evidence that made a judgment or settlement with MSC more likely."[108] That witness (another of the plaintiff's lawyer's clients) "testified that he remembered that one of the mask suppliers was 'Mine Services.'"[109] The plaintiff's development of this testimony narrowly justified remand.[110]

Plaintiffs here have not done even that "bare minimum."[111] As in *Hoyt*, Plaintiffs made no efforts "to establish liability"[112] against the Local Stores. Plaintiffs served no discovery on the Local Stores. Plaintiffs never sought to depose them or their employees. Plaintiffs never disclosed witnesses (fact or expert) to testify against them. And unlike in *Williams*, no fact witness even arguably connected the Local Stores to Harris' employers. Plaintiffs' complete failure to develop claims against the Local Stores

---

[106]    *Id.*

[107]    *Id.*; **Ex. 20**, 6/15/18 Hearing Tr. in *Williams* at 19, 31-32.

[108]    *Williams*, 2018 WL 3084710, at *5.

[109]    *Id.*

[110]    *Id.*

[111]    *Id.*

[112]    *Hoyt*, 927 F.3d at 292-93; *see also Heller v. Am States Ins. Co.*, No. CV 15-9771 DMG, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016) (finding bad faith because, among other reasons, plaintiff "never served any written discovery . . . designed to elicit evidence in support of his claims").

provides the circumstances the Court sought in *Williams* "to validate [its] concerns and justify removal based on bad faith."[113] This complete failure, coming after Plaintiffs sued the Local Stores despite Harris not associating the respirators he allegedly used with them, is both intentional conduct and a failure to actively litigate. And with the close of fact discovery, Plaintiffs cannot attempt to develop the claims. Nor could they, as the Local Stores have admitted that there is no factual basis that could support those claims.

Plaintiffs' choice to maintain claims against the non-diverse Local Stores but not even sue diverse Lowe's (the single seller of respirators Harris could identify) further confirms bad faith. Plaintiffs' liability theory is that all alleged respirator sellers had a duty to review complex scientific and governmental publications, to intuit from them that 3M's federally certified 8210 N95 respirators were defective, and then tell purchasers that.[114] 3M disagrees with that theory. But if it is true of small general mine supply stores in Harlan and Hazard, then it is surely also true of Lowe's, a Fortune 50 company with exponentially greater resources. Moreover, unlike the Local Stores that Harris could not associate with his employers, Harris knew he allegedly used respirators he bought at Lowe's. The only plausible explanation for Plaintiffs maintaining claims against the Kentucky-citizen Local Stores but not even suing North Carolina-citizen Lowe's is that the claims against the Local Stores were intended to defeat removal.

## II.    The other technical requirements are satisfied.

This removal meets the technical requirements of joinder, service, and notice. Besides 3M, the only remaining Defendants are the Local Stores. Although their

---

[113]    *Id.*

[114]    *See* **Ex. 2**, Compl. ¶¶ 54, 59.

consents are unnecessary because they are fraudulently joined,[115] both (through counsel) have verbally consented to removal, and 3M understands they intend to file written consents on the federal docket. The state court record is attached as **Exhibit 1** to this notice, and this satisfies the requirement to provide "a copy of all process, pleadings, and orders served upon" 3M in state court.[116] Promptly after removal, 3M will file a written notice of this removal in Martin Circuit Court, a copy of which is attached as **Exhibit 21** to this notice. 3M will attach this federal notice of removal as an exhibit to the state court filing and provide written notice of this removal to Plaintiffs.

* * *

3M gives notice that the above-styled action is hereby removed from the Martin Circuit Court to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville. Plaintiffs are notified to proceed no further in state court.

Respectfully submitted,

THOMPSON MILLER & SIMPSON PLC

_/s/ Michael J. Bender_
Byron N. Miller
Michael J. Bender
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 585-9900
Facsimile: (502) 585-9993
bmiller@tmslawplc.com
mbender@tmslawplc.com
mhess@tmslawplc.com
mhendricks@tmslawplc.com

---

[115]    _Chambers v. HSBC Bank USA, N.A._, 796 F.3d 560, 564 (6th Cir. 2015).

[116]    28 U.S.C. § 1446(a).

And

Bryant J. Spann
Robert H. Akers
THOMAS COMBS & SPANN
300 Summers Street, Suite 1380
Charleston, WV 25301
Telephone: (304) 414-1800
Facsimile: (304) 414-1801
BSpann@tcspllc.com
RAkers@tcspllc.com
JBrowne@tcspllc.com
LGibson@tcspllc.com
*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed this 23rd day of May 2025 through the operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A true and correct copy of the foregoing was also mailed and / or served via electronic mail to the following:

| | |
|---|---|
| Michael B. Martin<br>Martin Walton Law Firm<br>699 S. Friendswood Drive, Suite 107<br>Houston, TX 77546-4580<br>mmartin@martinwaltonlaw.com<br>beth@martinwaltonlaw.com<br>tiffany@martinwaltonlaw.com<br>*Counsel for Plaintiffs* | Johnny Givens<br>Givens Law Firm, PLLC<br>240 Trace Colony Park Drive, Suite 100<br>Ridgeland, MS 39157<br>johnny@givens-law.com<br>jeanreid@givens-law.com<br>*Counsel for Plaintiffs* |
| Will English<br>Napier Gault Schupbach & Stevens PLC<br>730 West Main Street, Suite 400<br>Louisville, KY 40202<br>wenglish@napiergaultlaw.com<br>abury@napiergaultlaw.com<br>*Counsel for Defendants Mine Service Company, Inc. and Kentucky Mine Supply Company* | |

/s/ Michael J. Bender
*Counsel for Defendant 3M Company*