UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

**KEITH HARRIS, et ux.**

    **Plaintiffs,**

v.                                                   **CIVIL ACTION NO.**
                                                                **7:25-CV-00027-REW-EBA**

**3M COMPANY, et al.**

    **Defendants.**

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO <u>REMAND AND MOTION FOR RULE 11 SANCTIONS</u>

    COME NOW, Plaintiffs, Keith Harris and Whitney Harris, through counsel, and file this Memorandum in support of their Emergency Motion to Remand and Motion for Rule 11 Sanctions and show the Court as follows:

**I.    Summary of the Argument**

    Keith and Whitney Harris committed no bad faith in suing the non-diverse respirator distributors. 3M Company ("3M") has filed 32 previous notices of removal in coal miner product liability cases. Nearly all of the removals were remanded. 3M removed the cases to extinguish trial settings in state court. Now with Mr. and Mrs. Harris's case set for trial on September 22, 2025, 3M removes it. 3M improperly removed this case two and a half years after it was filed on November 16, 2022. Fact discovery in this case ended on May 23, 2025. 3M waited and filed the notice late enough to frustrate Mr. Harris's trial setting.

    As with previous cases, 3M claims Mr. and Mrs. Harris acted in bad faith. In arguing bad faith, 3M attempts to create a false narrative with inaccurate statements:

1

1) 3M claims that the distributor defendant, Mine Services Company ("MSC") did not sell mining supplies and respirators to Keith Harris's employer despite sworn testimony filed by Wally Cornett, MSC President, that MSC did, in fact, sell supplies to Plaintiff's employer, Excel Mining LLC, and that equipment and supplies may have included dust masks and respirators manufactured by 3M. *See,* Exhibit 2, MSC's Answers to Plaintiffs' Interrogatories.

2) 3M claims that the Harris'sare in bad faith because they did not send discovery to the distributor defendants. This statement is false as the undersigned Plaintiffs' lawyers have propounded extensive discovery to the distributor companies in other cases. These discovery answers constitute admissions by a party opponent and are admissible. *See,* Exhibit 2, MSC's Answers to Plaintiffs' Interrogatories.

3) 3M claims that the Harris's experts offer no liability theories against distributor companies as evidence of bad faith, ignoring the expert report they provided before 3M removed the case. The report discusses the liability of in-state distributor Defendants, like MSC. *See,* Exhibit 5, Price Final Report.

4) 3M claims that the Harris's decision not to sue Lowe's, a national hardware store chain where Mr. Harris purchased respirators while he mined for one employer, is evidence of bad faith, even though Plaintiffs' expert limits his liability opinion on distributor liability to mine service companies that are "knowingly selling respirators to coal mine operators" which by definition must exclude businesses such as Lowe's or Home Depot who identify as do it yourself (DIY) stores, not coal mine service suppliers.

3M improperly removed the Harris' case because it cannot show bad faith. Because 3M's factual representations are untrue, this Court should grant Plaintiffs' Motion to Remand on the basis that the 3M Notice of Removal was without any factual merit. Because 3M intentionally tried to mislead this Court with inaccurate statements about the facts, costs should be imposed against 3M for the filing of its removal.

**II.     Relevant Facts.**

Plaintiff, Keith Harris is a thirty-eight-year-old former coal miner on oxygen. He undergoes careful monitoring by the lung transplant program at Vanderbilt University Medical Center. The Harris family faces extraordinary prejudice if this trial setting is lost, as his health continues to deteriorate rapidly.

Mr. Harris filed a lawsuit after he contracted coal worker's pneumoconiosis (CWP) caused by working in underground mines, while wearing respirators that were intended to protect him up to ten times (10X) the exposure limit for silica and coal dust. Mr. Harris filed this product liability lawsuit against 3M and other "respirator companies." Mr. Harris also sued "distributor defendants" which are mining equipment companies that sold respiratory protective devices exclusively to mine operators. Numerous distributor defendants are headquartered and reside in Kentucky, destroying diversity for purposes of 28 U.S.C.A. § 1446. Specific liability arguments exist against these distributor companies related to product liability for defective design and warning failures. *See,* Exhibit 5, Price Final Report, pp. 45-47. The distributor defendants sold these respirator products to underground mines despite well accepted findings, dating back to the 1970's, that such respirators should never be sold for use in coal mines.

**A.     3M proffers a false narrative, resulting in an improper removal.**

3M filed its Notice of Removal on May 24, 2025, two- and one-half years after this case was filed in state court. For purposes of 29 U.S.C.A. § 1446 (c), 3M did not file a notice within one year and improperly claims a bad faith exception. In order for 3M to argue that the Harris's acted in bad faith, 3M has fabricated facts and/or made jurisdictional fact arguments that are contradicted by sworn testimony. At best, 3M's removal is dilatory since it waited until the last day of fact discovery to send discovery requests on this issue to the non-diverse distributor defendants. At worst, 3M's removal is in bad faith because 3M fails to disclose the undisputed sworn testimony of distributor defendant, Mine Services Company (MSC), that it sold respiratory equipment, such as the 3M mask, to Plaintiff's employer "Excel Mining LLC."

1. **3M fails to disclose sworn testimony establishing that at least one non-diverse Defendant sold 3M respirators to Plaintiff's employer.**

Under the state court docket control order, all fact discovery had to be completed by May 23, 2025. *See,* Exhibit 1, State Court Amended Scheduling Order. 3M did not conduct any discovery as to any distributor defendant for two and a half years.

On May 23, 2025, 3M submitted requests for admissions to defendant Mine Services Company (MSC). *See,* Exhibit 10 and Exhibit 11 KMS and MSC's Responses to 3M's First Set of Request for Admission attached to 3M's Removal Notice (CT Doc 1-11 and 1-12). 3M's RFA's to MSC. Because May 23rd was also the discovery deadline, 3M needed MSC to answer admissions on the same day, otherwise such discovery would be obtained in violation of the scheduling order. Consequently, the answers to this discovery were a rush job. At 1:02 PM on May 23, 2025, 3M propounded requests for admissions to Mine Services Company (MSC). *See,* Exhibit 3, email transmittal from 3M counsel. Fifty-one minutes later, counsel for Mine Services Company answered this discovery. *See,* Exhibit 4, email transmittal MSC counsel to 3M counsel.

This expedited discovery suggests that neither Defendant was diligent in the investigation of the jurisdictional facts, attempting to answer the questions in less than an hour. These admissions purport to establish that MSC, an in-state defendant, did not sell respiratory equipment to KeithHarris's employers. A review of prior discovery responses from MSC provides sworn testimony that at least one state distributor defendant, MSC, sold respiratory protective equipment to Plaintiff's employer "Excel Mining LLC."

A diligent investigation by either 3M or MSC, would have revealed from these past sworn and verified discovery answers, made by MSC president Wally Cornett, that MSC, in fact, sold to "Excel Mining LLC," one of Keith Harris's employers, during the time frame Keith Harris was

4

employed by Excel Mining LLC. *See,* Exhibit 2, *Johnny Wilson, et al. v. 3M Company, et al.,* MSC Answer to Interrogatories at 9 and 10, February 24, 2023.

The MSC sworn and verified interrogatory answers indicate that MSC sold mining supplies to Excel Mining between the years 1979 to 2012. *Id.* at Answers 9 & 10. Interrogatory Answer 10 states, "MSC states that to the best of its recollection it sold mining supplies to *Excel Mining LLC*, Elkhorn Eagle Mining Company, Inc., and South Akers Mining Co. which it understands are at issue in this case." *Id.* (Emphasis added). In its Answer to Interrogatory 9, MSC states, "MSC states to the best of its recollection it sold mine supplies to *Excel Mining LLC*." *Id.* Interrogatory Answer 9, at Exhibit 2, p. 5, (Emphasis added). These interrogatory answers further explain that, "MSC can only say that from time to time it sold respiratory equipment manufactured by 3M during that time frame." *Id.* at p. 2. MSC states that, "to the extent it sold respiratory equipment manufactured by 3M, they would have been sold in their original condition and all documents, information and or warnings provided with the respiratory protective equipment from the manufacturer would have been passed on to the customer. *Id.* at 2-3.

Mr. Harris was employed at "Excel Mining LLC" from 2006 – 2008. *See,* Exhibit 6, Testimony of Keith Harris, pp. 83-84; and Exhibit 7, Keith Harris's Social Security Earnings records pp. 1-2. Sworn testimony from MSC establishes that, as an in-state resident and distributor, it sold mine supplies, which would include respiratory protection equipment, to "Excel Mining LLC" during the time when Mr. Harris was employed. These sworn answers were served on 3M. *See,* Exhibit 2 at p. 8, certificate of service. Before removing this case, 3M already possessed MSC's sworn discovery answers indicating that MSC had, in fact, sold equipment to Excel Mining LLC.

5

The rapidly answered requests for admissions by MSC are inconsistent with the sworn answers to interrogatories provided to the undersigned in the *Johnny Wilson* case. 3M failed to carefully consider this sworn testimony before improvidently filing the Notice of Removal.

3M suggests that Plaintiffs conducted no discovery. This assertion is incorrect. The undersigned has conducted extensive discovery against MSC and other in-state distributor defendants in other cases and already has information necessary to prosecute against these distributor defendants at trial. As referenced in Exhibit 2, Plaintiffs were already aware that MSC had sold to "Excel Mining LLC."

In the *Johnny Wilson* case, MSC's answers are sworn and verified providing more reliable information when compared to the 51-minute turnaround answers to requests for admissions, which were only signed by an attorney. FRCP 36 (a)(3) allows counsel to sign admissions. While the admissions were signed by counsel for MSC, Will English[1], they do not include the typical verification language as required by FRCP 26 (g). Thus, comparison to the sworn interrogatory answers, signed and verified by the MSC president, establishes that the discovery answers in the *Johnny Wilson* case are more reliable than unverified request for admission answers, which were answered in less than an hour.

3M wrongfully attempts to manufacture grounds for removal by attaching discovery responses which are in direct contradiction to sworn testimony from an earlier case, which 3M had in its possession before filing the Notice of Removal. 3M's last-minute attempt to manufacture a

---

[1] MSC's attorney, Mr. Will English was not MSC's lead counsel at the time it answered discovery in the *Johnny Wilson* case. At the time the previous sworn answers were filed in the *Johnny Wilson* case, MSC was represented by Patrick Gault, who tragically passed away last year. Mr. English has taken over representation but may not have been aware of these prior discovery answers; however, 3M's counsel were the same lawyers who received the sworn testimony in the *Johnny Wilson* case. There is no doubt that 3M's lawyers knew about the sworn testimony of MSC President, Wally Cornett.

groundless excuse for removal justifies imposition of costs against 3M for filing this Notice of Removal.

**B.     3M fails to disclose Plaintiffs' expert reports providing expert opinions on the liability of in-state distributor defendants.**

3M repeatedly misrepresents facts in its Notice of Removal. 3M incorrectly asserts that Plaintiffs' experts did not offer any opinions against distributor defendants. 3M claims that the distributor defendants were fraudulently joined because the Harris' experts have not offered a liability argument against the distributor defendants. In its brief, 3M falsely states that, "[a]nd his more than a dozen retained experts did not disclose opinions against them [distributor defendants]." *See,* 3M Brief at p. 4.

Plaintiffs presented their liability expert, Dr. Jack Price, for deposition on May 16, 2025. In that deposition, Dr. Price proffered his expert report which outlines Plaintiffs' liability arguments against MSC and other distributor defendants. *See,* Exhibit 5, "Distributor Liabilities" at pages 45-47. 3M received a copy of this report on May 15, 2025, the day before Dr. Price was deposed.

3M knew of the information in Dr. Price's report implicating the liability of distributors before it removed the case. 3M's argument that Plaintiffs are not offering expert testimony on distributor liability is factually wrong. Since 3M had possession of the expert report before filing this Notice of Removal, it can be demonstrated that 3M intentionally made this argument with knowledge that it was wrong. When a party knowingly proffers a false argument to the Court, Rule 11(c) authorizes imposition of sanctions, which should be awarded here.

7

### C. 3M mischaracterizes Plaintiffs' decision not to sue Lowe's as a distributor defendant because Lowe's did not sell exclusively to mine operators.

On pages 4 and 21 of its removal notice, 3M argues that Mr. Harris purchased his respirators directly from Lowe's but did not sue Lowe's, suggesting that his failure to sue Lowe's serves as proof of fraudulent joinder and confirms Plaintiffs' bad faith. Plaintiffs have the right to craft the allegations against each Defendant as he sees fit, based upon the evidence. Plaintiffs' expert, Dr. Jack Price, explains that distributor companies that are "knowingly selling respirators to coal mine operators should recognize that certain classes of respirators should not be used in a mine." *See,* Exhibit 5 at p. 47. However, such opinions do not apply to the super-sized hardware stores marketing the DIY (do it yourself) approach to hardware sales. Dr. Price's testimony is pointed at the Kentucky in-state distributors companies tailored specifically for mining, such as MSC, who exclusively sell mining supplies to mine operators. One will not find a roof bolter filter, or a long wall miner cutter, or continuous miner parts in a Lowe's store. A Lowe's store does not uniquely market to underground mines.

The decision not to include Lowe's in this litigation is based upon a careful and well-tempered analysis of the facts, as supported by expert opinion. A Lowe's type of operation follows a distinctly different business approach, than specialized coal mine equipment distributors addressed in the Price report, who marketed their products directly to underground coal mine operations. Harris's decision not to sue Lowe's is not evidence of bad faith or fraudulent joinder but is evidence of the well-tailored allegation limited by the opinions proffered by his expert.

*Legal Analysis*

### III.     Standard of Review.

Removal of diversity cases is subject to two statutory deadlines. First, if a case is not initially removable, the defendant must file a notice of removal "within 30 days after receipt" of the paper "from which it may be first ascertained that the case ... has become removable." 28 U.S.C. § 1446(b)(2)(3). Second, removal is subject to an overall deadline of "1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing an action." *Id.* at 1446 (c)(1).

3M Company has repeatedly removed cases based either upon fraudulent joinder or bad faith, and the federal courts have repeatedly and consistently overruled 3M's arguments. [2] Yet, 3M

---

[2] *See, e.g.*, *Williams v. 3M Company, et al.*, No. 7:18-cv-63-KKC, Doc #: 22 (E.D. Ky. June 22, 2018) (Opinion); *Hoskins v. 3M Co.*, No. 6: 17-cv-304-KKC and Hall v. 3M Co., No. 7:18-cv-09-KKC, 2018 WL 1040091 (E.D. Ky. Feb. 23, 2018); *Seward v. Minnesota Mining and Manufacturing Co., et al.*, No. Civ. A. 705-134-DCR, 2005 WL 1719358 (E.D. Ky. July 22, 2005); *Carr, et al. v. Minnesota Mining and Manufacturing Co.*, et al., No. Civ. A. 6:05-150-DCR, etal., 2005 WL 1871110 (E.D. Ky. July 22, 2005); *Amar, et al. v. Minnesota Mining & Manufacturing Company,* et al., No. 4:04-cv-164-M (W. D. Ky. Oct. 19, 2005) (Memorandum Opinion and Order); *Adams, et al. v. Minnesota Mining & Manufacturing Company*, et al., Nos. 4:03-cv-182-M, 4:04-cv-2-M, 2004 WL 718917 (W. D. Ky. March 30, 2004); *Baker, et al. v. Minnesota Mining and Manufacturing Company, et al.*, No. 03-cv-470-KKC (E.D. Ky. May 26, 2004) (Memorandum Opinion); *Banks, et al. v. 3M Company, et al.*, No. 7:21-cv-00083-REW-CJS, Doc #: 1 (E.D. Ky. Oct. 25, 2021) (Notice of Filing Removal); *Combs, et al. v. 3M Company*, et al., No. 7:21-cv-00084-REW-CJS, Doc #: 1 (E.D. Ky. Oct. 25, 2021) (3M Notice of Removal); *Yates, et al. v. 3M Company, et al.*, No. 7:21-cv-00085-REW-CJS, Doc#: 1 (E.D. Ky. Oct. 25, 2021) (3M Notice of Removal); *Hamilton, et al. v. 3M Company, et al.*, No. 7:21-cv-00087-REW- CJS, Doc#: 1 (E.D. Ky. Oct. 25, 2021) (3M Notice of Removal); *Bowen, et al. v. 3M Company, et al.*, No. 7:22-cv-00014-REW-CJS, Doc#: 1 (E.D. Ky. March 4, 2022) (3M Notice of Removal); *Castle, et al. v. 3M Company*, et al., No. 7:22-cv- 00014-REW-CJS, Doc#: 1 (E.D. Ky. March 4, 2022) (3M Notice of Removal); *Bartley, et al. v. Mine Safety Appliance Company, et al.*, No. 7:22-cv-00032-REW-CJS, Doc#: 1 (E.D. Ky. March 27, 2022) (3M Notice of Removal); *Lawson v. Mine Safety Appliance Company, et al.*, No. 7:22-cv-00033-REW-CJS, Doc#: 1 (E.D. Ky. Mar. 27, 2022) (3M Notice of Removal); *Bates, et al. v. American Optical Corporation, et al.*, No. 7:22-cv-00034-REW-CJS, Doc #: 1 (E.D. Ky. March 27, 2022) (3M Notice of Removal); *Smith, et al. v. Mine Safety*

continues to use the removal process as a tactic to avoid trial settings, disregarding the purpose of §1446 and burdening federal courts with the continuing task to remand such improvidently filed removals.

The 3M arguments submitted in its removal in this case are neither novel nor unique. 3M argued fraudulent joinder in many past removals. 3M has repeatedly lost that argument. In fraudulent joinder removals the Court explained the proper standard of review:

> The burden of establishing jurisdiction falls on the removing party. *Eastman v. Marine Mech. Corp.*, 438 F.3d 54, 549 (6th Cir. 2000). And, because of the federalism concerns implicated by removal, "all disputed questions of fact or ambiguities in the controlling . . . state law" must be resolved "in favor of the non removing party." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1996) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) (alteration in original).

---

*Appliances Company, LLC*, et al., No. 7:22-cv-00035-REW-CJS, Doc #: 1 (E.D. Ky. March 28, 2022) (3M Notice of Removal); *Stump, et al. v. 3M Company, et al.*, No. 7:22-cv-00036-REW-CJS, Doc #: 1 (E.D. Ky. March 28, 2022) (3M Notice of Removal); *Holbrook, et al. v. 3M Company, et al.*, No. 7:22-cv-00038-REW-CJS, Doc #: 1 (E.D. Ky. March 29, 2022) (3M Notice of Removal); *Hamilton v. Mine Safety Appliances Company, et al.*, No. 7:22-cv-00044-REW-CJS, Doc #: 1 (E.D. Ky. May 12, 2022) (3M Notice of Removal); *Smith v. Mine Safely Appliance Company, et al.*, No. 7:22-cv-00046-REW-CJS, Doc#: 1(E.D. Ky. May 16, 2022) (3M Notice of Removal); *Lawson v. Mine Safety Appliance Company, et al.*, No. 7:22-cv- 00050-REW-CJS, Doc #: 1 (E.D. Ky. May 31, 2022); *Wright, et al. v. 3M Company, et al.*, No. 7:22-cv-00051-REW-CJS, Doc#: 1 (E.D. Ky. June 3, 2022) (3M Notice of Removal); *Gibson, et al. v. 3M Company, et al.*, No. 7:22-cv-00060-REW-CJS, Doc#: 1 (E.D. Ky. July I, 2022) (3M Notice of Removal); *Hatfield, et al. v. 3M Company, et al.*, No. 7:22-cv-00062-REW-CJS, Doc #: 1 (E.D. Ky. July 9, 2022) (3M Notice of Removal); *Tackett, et al. v. 3M Company, et al.,* No. 7:22-ev-00063-REW CJS, Doc #: 1 (E.D. Ky. July 9, 2022) (3M Notice of Removal); *Wright, et al. v. 3M Company, et al.,* No. 7:22-cv-00051-REW-CJS, Doc#: 1 (E.D. Ky. June 3, 2022) (3M Notice of Removal); *Cook, et al. v. Mine Safely Appliance Company, et al.*, No. 7:22-cv-00065-REW-CJS, Doc #: 1 (E.D. Ky. July 11, 2022) (3M Notice of Removal); *Anderson, et al. v 3M Company, et al.,* No. 7:22-cv- 00068-REW-CJS, Doc#: 1 (E.D. Ky. July 15, 2022) (3M Notice of Removal); *Daniels, et al. v. 3M Company, et al.,* No. 7:22-cv-00069-REW-CJS, Doc #: 1 (E.D. Ky. July 15, 2022) (3M Notice of Removal); *May, et al. v. 3M Company, et al.*, No. 7:22-cv-00078-REW-CJS, Doc #: I (E.D. Ky. July 29, 2022) (3M Notice of Removal);*Justice, et al. v. 3M Company, et al.*, No. 7:22-cv-00084-REW-CJS, Doc#: 1 (E.D. Ky. August 19, 2022) (3M Notice of Removal); *Meade, et al. v. 3M Company, et al.*, No. 7:22-cv-00090-REW-CJS, Doc #: 1 (E.D. Ky. August 26,2022) (3M Notice of Removal).

*Williams v. 3M Company,* 2018 WL 3084710, *4 (E.D. Ky. June 22, 2018). This same standard applies to cases which assert bad faith under § 1446 (c) (1). *Id.* However, in bad faith removals, this Court has also explained that, "the non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to [the] determination regarding fraudulent joinder.'" *Id*. at *6 citing, *Walker v. Philip Morris USA, Inc.,* 443 F. App'x 946, 951 (6th Cir. 2011).

3M claims the exception of bad faith under 28 U.S.C. § 1446 (c). A bad faith analysis requires a determination of "whether Plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court." *See, Hoskins v. 3M Company,* 2018 WL 1040091, *6 (E.D. Ky. February 23, 2018); *Williams v. 3M Company,* 2018 WL 3084710 *6 (E.D. Ky. June 22, 2018), citing, *Hiser v. Seay,* 2014 WL 6885433 at *4 (W.D. Ky. Dec. 5, 2014). This Court also has a second approach to the bad faith analysis:

> First, the Court assesses whether the plaintiff actively litigated its case against the removal spoiler in state court . . . If the answer is no, there was bad faith: if yes, that finding creates a rebuttable presumption that the plaintiff acted in good faith."

*Williams* at *7, *Hoskins* at * 7, citing, *Aguayo v. AMOCO Ins. Co.,* 59 F.Supp.3d 1225, 1264 (D.N.M.2014). While this Court did not adopt either standard, it concluded that after an analysis of 3M's arguments in recent removals, 3M could not meet its burden of showing bad faith after a full review of the plaintiffs' conduct. *Id.* A recent West Virginia opinion, which remanded a coal miner product liability case after 3M removed it, explained that, "a defendant alleging that a plaintiff acted in bad faith . . . bears an *arduous burden* that requires evidence of forum manipulation." *Pope v. 3M Co.,* 2022 WL 16964772 at *5 (S.D. W. Va. 2022). There is no evidence establishing bad faith by Mr. and Mrs. Harris under any of these standards.

11

**IV.     3M Company's Notice of Removal fails to demonstrate Plaintiffs were in bad faith.**

3M waited much longer than a year to remove this case. This requires 3M to establish that Mr. and Mrs. Harris acted in bad faith by suing the non-diverse distributor defendants. In *Hoskins/Williams,* the Eastern District of Kentucky found that 3M could not meet the burden of showing that plaintiffs' conduct was in bad faith. *Hoskins* instructed that 3M could not meet the "high burden" of proving bad faith against a plaintiff who included distributor defendants in their product liability action. *Hoskins v. 3M,* at *8-9.

In both *Hoskins* and *Williams,* 3M asserted that the plaintiffs acted in bad faith because they did not actively litigate claims against the distributor defendants. *Id.* 3M claimed the plaintiffs never developed the requirements for liability under the Kentucky middleman statute. *Id.* This Court rejected 3M's arguments. The Court found that the plaintiffs had done the "bare minimum" to actively litigate against the distributor defendants, which included the deposition of a fact witness who identified MSC, as the vendor selling respirators at the mine where plaintiff worked. *Id.* at *10.

The Harris' offer expert opinions on the distributor's liability. KMS has verified discovery answers acknowledging that it sold 3M respirator products to one of Mr. Harris's employers. The Harris's have done more than the "bare minimum" as outlined in the *Hoskins/Williams* opinions. They acquired evidence from a fact witness who carries greater weight than a coal miner remembering the distributor name as reflected in the *Hoskins* case. They have the written testimony of Wally Cornett, the president and chief executive officer of the distributor defendant MSC. *See,* Exhibit 2, interrogatory answers, February 24, 2023. This testimony is more compelling than a coal miner fact witness relied upon in *Hoskins.* Mr. and Mrs. Harris have testimony of a party

12

defendant, establishing that MSC was the distributor of respiratory equipment used by Mr. Harris while he was employed at Excel Mining, LLC.

Defendant 3M was served with MSC's Answers to the Johnny Wilson interrogatories on February 24, 2023, and therefore, already knew that Defendant, MSC, sold mining supplies, which included respirators, to Mr. Harris's employer, Excel Mining LLC. The answers to requests for admissions from 3M, obtained in a record time of 51 minutes, do not rebut the testimony of Wally Cornett because the admissions are not verified as required by FRCP 26(g) and come from a lawyer new to the litigation.

Despite 3M's misrepresentations to the contrary, Plaintiffs produced their expert, Dr. Jack Price, for deposition on May 16, 2025. The deposition included the production of an expert report which outlined, very specifically, Plaintiffs' liability arguments against the distributor defendants. *See,* Exhibit 5, Expert Report of Dr. Price, pp. 45-47. Specifically, Plaintiffs' expert report states, in part:

> **"Distributor Responsibilities"**
>
> The ANSI standard should be familiar to distributor companies selling safety equipment. As a consensus organization, the standards are ones that should be familiar to safety equipment companies. This concept was recognized by NIOSH in relation to the sale of safety equipment to unsophisticated users. NIOSH recognized that safety distributor companies were the entities which the purchaser most typically relied upon for advice on selection fit and use of respirators in a contaminated environment. . . .
>
> The supplier, distributor and/or retailers of disposable respirators should have known the following:
>
> 1. Disposable masks cannot secure an adequate face seal to prevent contaminated air from bypassing the filter media and directly entering the respiratory system; and
>
> 2. The wear was unable to perform qualitative fit testing on disposable respirators that a proper face seal has been obtained prior to and during normal work duties..."

*See,* Exhibit 5, Report of Jack Price, produced before the May 16, 2025, deposition.

The collective evidence regarding this removal demonstrates two critical points. First, evidence exists from a party defendant that Mr. Harris did, in fact, likely wear 3M respirators sold by MSC, a distributor defendant. Second, Plaintiffs can prove that the distributor defendant had independent liability as specified by the Kentucky "middleman statute" with expert testimony already presented to 3M before it filed the Notice of Removal.

The status of the distributor defendant in the Harris case reveals that Mr. and Mrs. Harrisare ready to try the case against MSC, if the case were called to trial tomorrow. These facts are stronger than those presented in *Hoskins,* which also found the Plaintiff was not in bad faith. In *Hoskins*, the plaintiff did not pursue and/or file written discovery against the distributor defendants but relied solely on a single coal miner fact witness. This Court found that while such effort represented the "bare minimum" it was sufficient to defeat 3M's argument of bad faith.

The absence of written discovery propounded by the Harris's is of little import because Plaintiffs' counsel already had the written discovery answers from other litigation. Additionally, Plaintiffs' expert has provided his analysis of the duties and responsibilities of MSC, as a distributor defendant.

3M's removal is based solely on an argument unsupported by the facts. MSC, a non-diverse Defendant, sold products to one of Mr. Harris's employers. Accordingly, for purposes of this motion to remand, it can be established that Plaintiff used equipment sold by at least one Kentucky based resident, MSC. This fact necessitates remand of the case to state court. *See,* Exhibits 2 & 5.

14

    **V.**    **The Distributor Defendants were not Fraudulently Joined**

A colorable claim remains against the distributor defendants, destroying diversity. This colorable claim is supported by evidence, as specifically pled in the Plaintiffs' Complaint, which establishes that the local Defendants knew, or in the exercise of reasonable care, should have known that the 3M respirators could not provide an adequate face seal, causing leakage around the face of the wearer. Mr. and Mrs. Harris offer expert testimony from a certified industrial hygienist, Dr. Price, that confirms the Plaintiffs' Complaint. The verified discovery answers of Defendant, MSC, indicate it sold 3M's respiratory products to Mr. Harris's mining employer, Excel Mining, at the time he was employed by Excel. *See*, *Castle v. 3M Co*., 664 F. Supp. 3d 770, 774 *(*E.D. Ky, 2023) (a fraudulent joinder assessment requires the court to "resolve all disputed questions of fact and ambiguities in the controlling … state law in favor of the non-removing party."). "To defeat a fraudulent joinder claim, the plaintiffs… must only show that they have a 'colorable basis' for recovery." *Id.* at 775. In the Harris' case, 3M cannot point to any facts that invalidate Plaintiffs' claims against the distributor Defendants, defeating 3M's allegation of fraudulent joinder.

    **VI.**    **3M Company acted in bad faith in filing the Notice of Removal**

After having lost nearly every removal that 3M has filed, some consideration should be given to whether 3M is acting in bad faith regarding a removal. Rule 11 of the Federal Rules of Civil Procedure prescribes that sanctions are proper if a party submits a pleading that is intended to cause unnecessary delay. *See,* Fed. R. Civ. Pro. 11 (b) (1). The Sixth Circuit has held that filing an improper notice of removal can subject a party to sanctions pursuant to Fed. R. Civ. P. 11. *Juister v. Bechtel Power Corp.* 869 F. 2d 1491 (6th Cir. 1989).

3M's Notice of Removal was filed purely for purposes of delay, to avoid a September 22, 2025, trial setting. Thirteen depositions have already been taken in this case, including one of

Plaintiffs' liability experts. Considerable work and time have been invested in preparing this case for trial. The removal has caused depositions already scheduled to be cancelled. *See,* Exhibit 8, email from Akers to Givens.

    In its Notice of Removal, 3M stated:

> Despite not knowing which company had sold the respirators he allegedly used to his employers, Harris served no requests for production, interrogatories, or request for admission to find out, or otherwise build his case against the Local Stores. He did not depose their corporate representatives or employees. The scores of lay witnesses he designated for trial included none from the Local Stores. And his more than a dozen retained experts did not disclose opinions against them.

*See,* p. 4 of the Defendant's Notice of Removal. There is no evidentiary support for the above stated paragraph. When a party submits a notice of removal, the party is obligated to ensure that, "the allegations and other factual contentions have evidentiary support." *Harper v. Auto Alliance, Inc.,* 392 F. 3d 195, 201-2 (6th Cir. 2004). Prior to filing its Notice of Removal, 3M knew the following:

- 3M's allegation that, "more than a dozen experts did not disclose opinions against them [distributor defendants]" ignores 3M's deposition of Plaintiffs' expert taken in the Harris case on May 16, 2025, Dr. Jack Price, who proffered a report which provided specific opinions on the liability of the distributor defendants (as 3M calls them the "Local Stores") *See,* Exhibit 5, Jack Price report;

- 3M does not disclose discovery it received over a year ago from MSC in a companion case where MSC president testified he sold mine supplies to Excel Mining LLC but failed to disclose this discovery to MSC's new lawyer and failed to disclose this fact to the Court; and

- 3M's allegation that, "scores of lay witnesses he designated for trial included none from the Local Stores" fails to acknowledge testimony proffered by MSC's President is admissible as an admission of a party opponent.

The above evidence demonstrates 3M's lack of candor and illustrates the primary purpose of the removal: to seek a delay in the state court trial setting. For this reason, 3M Company should be held responsible and sanctioned for attorneys' fees and costs associated with this removal.

16

        Respectfully submitted,

        **MARTIN WALTON LAW FIRM**

        */s/Michael B. Martin*
        Michael B. Martin
        Texas Bar No.: 13094400
        Kentucky Bar No. 96907
        699 S. Friendswood Drive, Suite 106
        Friendswood, Texas 77546-4580
        T:  (713) 773-2035
        F:  (832) 559-0878
        mmartin@martinwaltonlaw.com

        Johnny Givens
        Kentucky Bar No.: 98938
        GIVENS LAW FIRM, PLLC
        240 Trace Colony Park Drive, Suite 100
        Ridgeland, Mississippi 39157
        T:  (601) 300-2009
        F:  (601) 651-3948
        johnny@givens-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served electronically or via US Mail on this 28th day of May 2025, upon all parties of record.

        */s/Michael Martin*
        Michael B. Martin